1

2

3

4

5

6

7

8

9

10

HONORABLE BENJAMIN H. SETTLE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11    COMMUNITIES FOR A HEALTHY BAY,
       a Washington non-profit corporation,

12

13                    Plaintiff,

14            v.

15    HUSKY TERMINAL AND
       STEVEDORING, LLC, a Foreign Limited
16    Liability Company,

17                    Defendant.

18

Case No. 3:24-cv-05662-BHS

CONSENT DECREE

19            **I.    STIPULATIONS.**

20        Husky Terminal and Stevedoring, LLC ("Husky") owns and operates an industrial facil-

21    ity at or near 1101 Port of Tacoma Road, Tacoma, Washington 98421 (hereinafter referred to as

22    "the Facility").

23        Husky discharges stormwater associated with industrial activity from the Facility under a

24    National Pollutant Discharge Elimination System ("NPDES") Permit issued by the Washington

25    State Department of Ecology ("Ecology") under Permit No. WAR004486 ("the Permit").

26

27

28

CONSENT DECREE - 1
Case No. 3:24-cv-05662-BHS

Under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, Plaintiff Communities for a Healthy Bay ("Communities") sent Husky a notice of intent to sue letter dated June 5, 2024 ("Notice Letter"), and filed a complaint against Husky on August 12, 2024 ("Complaint"), alleging that Husky is in ongoing violation of the CWA and certain terms and conditions of the Permit. Husky denies these claims.

Communities' Complaint seeks declaratory and injunctive relief, the imposition of civil penalties, and an award of litigation expenses including attorney and expert fees.

Husky and Communities (individually a "Party" and collectively the "Parties") agree the Court has jurisdiction over the Parties and the subject matter of this action under section 505(a) of the CWA, 33 U.S.C. § 1365(a).

The Parties agree that settlement of this matter is in the best interest of the Parties and the public and that entry of this Consent Decree without additional litigation is the most appropriate means of resolving this action.

Communities and Husky have each sought and obtained the advice of their own independent legal counsel before agreeing to be bound by this Consent Decree.

The Parties stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding the claims and allegations set forth in Communities' Notice Letter and Complaint.

The Parties recognize that, pursuant to section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a CWA citizen suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protec-

KAMPMEIER & KNUTSEN PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

tion Agency. Therefore, upon the filing of this proposed Consent Decree by the Parties, Communities will serve copies of it upon those officials.

The signatories for the Parties certify that they are authorized by the Party they represent to enter into this Consent Decree.

SO STIPULATED AND AGREED this 22nd day of November 2024.

COMMUNITIES FOR A HEALTHY BAY          HUSKY TERMINAL AND
                                        STEVEDORING, LLC

By: _____          By: _____
    Melissa Malott, Executive Director      Dustin Stoker, President

## II.    ORDER AND DECREE.

THIS MATTER came before the Court on the foregoing Stipulations of the Parties and the Parties' Joint Motion for Entry of Consent Decree. Having considered the stipulations, the joint motion, and the terms and conditions below, the Court hereby ORDERS, ADJUDGES, AND DECREES as follows:

1.    **Jurisdiction.** This Court has jurisdiction over the Parties and subject matter of this action pursuant to section 505(a) of the CWA, 33 U.S.C. § 1365(a).

2.    **Effective Date.** This Consent Decree shall take effect on the date it is entered as an Order of the Court ("Effective Date").

3.    **Termination Date.** This Consent Decree shall terminate without further action by either Party one year after the Effective Date or upon Husky's complete performance of the obligations in Paragraphs 6.E.–I., 7, and 8 of this Consent Decree, whichever occurs later ("Termination Date").

[CONSENT DECREE - 3
[Case No. 3:24-cv-05662-BHS

KAMPMEIER & KNUTSEN PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

1  4.      **Applicability.** This Consent Decree shall inure to the benefit of, and be binding

2  upon, the Parties and their successors, assigns, officials, agents, representatives, officers, direc-

3  tors, and employees. Changes in the organizational form of a Party shall have no effect on the

4  binding nature of this Consent Decree or its applicability.

5  5.      **No Admission of Liability.** This Consent Decree is a settlement of disputed facts

6  and law. It is not an admission or adjudication regarding any allegations by Communities in this

7  case or of any fact or conclusion of law related to those allegations nor evidence of any wrong-

8  doing or misconduct on the part of Husky. Husky agrees to the terms and conditions in this Con-

9  sent Decree in full and complete satisfaction of all claims covered by this Consent Decree.

10  6.      **Injunctive Relief.**

11      A.      While this Consent Decree is in effect, Husky shall fully comply with the

12  terms and conditions of the Permit and any successor NPDES permit authorizing discharges of

13  stormwater associated with industrial activity;

14      B.      While this Consent Decree is in effect, Husky shall, no later than forty-

15  five (45) days following each calendar quarter, send to Communities pursuant to the notice pro-

16  visions in Paragraph 11 copies of all Permit-related documents that Husky has transmitted to, or

17  received from, Ecology during the previous calendar quarter;

18      C.      While this Consent Decree is in effect, Husky shall vacuum sweep, or for

19  areas that a vacuum sweeper cannot access Husky shall mechanically sweep or manually sweep,

20  twice per month all paved surfaces in Basins 7, 8, 9, and 10, as safety and operations allow

21  (which Basins are identified in the Facility map attached hereto as Exhibit 1);

22      D.      While this Consent Decree is in effect and to address a portion of Basin 3

23  of the Facility and a portion of Basin 4 of the Facility (which Basins are identified in the Facility

CONSENT DECREE - 4
Case No. 3:24-cv-05662-BHS

KAMPMEIER & KNUTSEN PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

map attached hereto as Exhibit 1) that each separately discharge through oil/water separators and modular wetlands, Husky shall monitor the stormwater discharges from the modular wetland in either Basin 3 or Basin 4 (which Basins are identified in the Facility map attached hereto as Exhibit 1) at a monitoring point that is within the stormwater system and downstream of the modular wetland, in accordance with all requirements of the Permit, including those exempting a facility from monitoring during unsafe conditions. Within seven (7) business days of the Effective Date, Husky will submit a Discharge/Sample Point Update form or other required paperwork to Ecology designating the new monitoring point. Husky may identify, in accordance with applicable Permit requirements, the stormwater discharge from the other modular wetland as substantially identical to the stormwater discharge it is monitoring pursuant to this Paragraph.

    E.  Within sixty (60) days of the Effective Date, Husky shall engage a qualified stormwater engineer to evaluate Basins 7, 8, 9, and 10 of the Facility (which Basins are identified in the Facility map attached hereto as Exhibit 1) and recommend in a written Catch Basin Memorandum to Husky catch basin inserts to install in Basins 7, 8, 9, and 10, and a maintenance schedule for those inserts to ensure compliance with the Permit. Also within sixty (60) days of the Effective Date, Husky shall provide the Catch Basin Memorandum to Communities pursuant to the notice provisions in Paragraph 11 of this Consent Decree. Husky shall take all commercially reasonable steps to obtain the catch basin inserts recommended in the Catch Basin Memorandum within thirty (30) days of providing the Catch Basin Memorandum to Communities. Husky shall install the catch basin inserts recommended in the Catch Basin Memorandum within thirty (30) days of providing the Catch Basin Memorandum to Communities or within ten (10) business days after receiving the catch basin inserts recommended in the Catch Basin Memorandum from the vendor, whichever is later;

KAMPMEIER & KNUTSEN PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

1    F.    Within sixty (60) days of the Effective Date, Husky shall, through a quali-
2  fied stormwater professional, evaluate the need for additional trash receptacles along the Facil-
3  ity's northeast boundary abutting Blair Waterway, as shown in the Facility map attached hereto
4  as Exhibit 1, and Husky shall install at least one additional trash receptacle along the Facility's
5  northeast boundary abutting Blair Waterway;

6

7    G.    Within sixty (60) days of the Effective Date, Husky shall either (i) provide
8  a memorandum to Communities signed by Husky's qualified stormwater professional that con-
9  firms that the Facility is designed to capture and manage all of its stormwater so as not to allow
10 stormwater to discharge from the waterfront perimeter of the Facility's Permit coverage area, as
11 identified in  Exhibit 1, except at the designated outfalls; or (ii) implement additional best man-
12 agement practices ("BMPs") to ensure stormwater does not discharge from the waterfront perim-
13 eter of the Facility's Permit coverage area, as identified in Exhibit 1, other than at the designated
14 outfalls;

15

16    H.    Husky shall prepare a final revised Stormwater Pollution Prevention Plan
17 ("SWPPP") that incorporates the requirements set forth in this Consent Decree and that contains
18 all requisite SWPPP components identified in the Permit as follows:

19    i.    Within sixty (60) days of the Effective Date, Husky shall, with the
20 assistance of a qualified stormwater professional, prepare a draft revised SWPPP for the Facility
21 that incorporates the requirements set forth in this Consent Decree;

22    ii.    Also within sixty (60) days of the Effective Date, Husky shall send
23 a copy of the draft revised SWPPP to Communities pursuant to the notice provisions in Para-
24 graph 11 of this Consent Decree. Communities may submit comments on the draft revised
25 SWPPP to Husky within thirty (30) days of receiving the draft revised SWPPP;

26

27

28

CONSENT DECREE - 6
Case No. 3:24-cv-05662-BHS

iii.    Within one hundred and twenty (120) days of the Effective Date, Husky shall finalize the revised SWPPP as provided in this Paragraph. If Communities submits written comments on the draft revised SWPPP, the final revised SWPPP shall either incorporate Communities' comments into the final revised SWPPP, or Husky shall provide a detailed written response to Communities' comments explaining why Husky did not incorporate Communities' comments. If Communities does not provide comments on the draft revised SWPPP within the allotted time, Husky shall finalize the revised SWPPP within one hundred twenty (120) days of the Effective Date. Husky shall provide Communities with a copy of the final revised SWPPP and, if appropriate, any written responses promptly upon certification of the final revised SWPPP. A qualified industrial stormwater professional shall certify the final revised SWPPP as follows: "The Permittee has made appropriate revisions to the SWPPP to include treatment BMPs with the goal of achieving the applicable benchmark value(s) in future discharges. Based on my review of the SWPPP, discharges from the facility are reasonably expected to meet the ISGP benchmarks upon implementation."; and

iv.    Within one hundred and fifty (150) days of the Effective Date, Husky shall fully implement the final revised SWPPP, provided the implementation schedule for the requirements in Paragraph 6.E. of this Consent Decree supersedes this provision; and

I.    Within thirty (30) days of the Effective Date, Husky shall pay five thousand dollars and no cents ($5,000.00) to Communities to conduct the review and comment process set forth in Paragraph 6.H. Husky shall make this payment pursuant to the same instructions required in Paragraph 8 of this Consent Decree.

KAMPMEIER & KNUTSEN PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

7. **Environmental Benefit Projects.** Within thirty (30) days of the Effective Date, Husky shall pay a total of two hundred thousand dollars and no cents ($200,000.00) to the following organizations, in the following amounts, for one or more projects benefiting water quality and/or aquatic habitat in Puget Sound, as described in Exhibits 2 and 3 to this Consent Decree:

A.      Husky shall pay one hundred fifty thousand dollars and no cents ($150,000.00) to the Puyallup Tribe of Indians for environmental benefit project(s), as described in Exhibit 2. Husky shall make this payment by check made payable to the Puyallup Tribe of Indians and mailed to Russ Ladley, Puyallup Tribal Fisheries, Puyallup Tribe of Indians, 3002 Duct Cho Street, Tacoma, Washington 98404. The payment shall bear the notation "Communities for a Healthy Bay/Husky Terminal and Stevedoring, LLC Clean Water Act Settlement;" and

B.      Husky shall pay fifty thousand dollars and no cents ($50,000.00) to the Rose Foundation for Communities and the Environment for environmental benefit project(s), as described in Exhibit 3. Husky shall make this payment by check made payable and mailed to Rose Foundation for Communities and the Environment, 201 4th Street, Suite 102, Oakland, California 94607-4369. The payment shall bear the notation "Communities for a Healthy Bay/Husky Terminal and Stevedoring, LLC Clean Water Act Settlement."

Husky shall notify Communities pursuant to the notice provisions in Paragraph 11 of this Consent Decree when Husky makes the payments required by this Paragraph.

8. **Reimbursement of Litigation Expenses.** Within thirty (30) days of the Effective Date, Husky shall pay Communities one hundred thousand eight hundred forty-five dollars and zero cents ($100,845.00) for attorneys' fees and litigation costs in this matter. Husky shall make the payment required by this Paragraph via electronic funds transfer to the Washington IOLTA trust account maintained by Kampmeier & Knutsen, PLLC, Communities' attorneys in this case.

KAMPMEIER & KNUTSEN PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

Within seven (7) days of the Effective Date, Communities shall, through counsel, provide to counsel for Husky the information necessary to make the electronic funds transfer required by this Paragraph. Before finalizing the payment, Husky or its counsel shall contact an attorney at Kampmeier & Knutsen, PLLC, counsel for Communities, to confirm the bank account information and routing number of the account designated to receive the payment required by this Paragraph. Husky shall not direct the payment required by this Paragraph to any other bank account or recipient unless the Parties seek and the Court issues an order modifying this Paragraph of this Consent Decree. Husky shall notify Communities pursuant to the notice provisions in Paragraph 11 of this Consent Decree when Husky makes the payment required by this Paragraph.

9.    **Settlement and Release.** As of the Effective Date, Communities releases all CWA claims alleged against Husky in Communities' Notice Letter and Complaint that accrue prior to and through the Effective Date, that relate to alleged violations of Husky's Permit, and that could be asserted by Communities against Husky, its officers, directors, employees, shareholders, consultants, contractors, or agents. All such claims are released and dismissed with prejudice. As of the Effective Date, Communities further releases all other CWA claims, known or unknown, that accrue prior to and through the Effective Date, that relate to alleged violations of Husky's Permit, and that could be asserted by Communities against Husky, its officers, directors, employees, shareholders, consultants, contractors, or agents. All such claims are released and dismissed with prejudice. Husky's payment pursuant to Paragraph 8 of this Consent Decree will be a full and complete satisfaction of any claims Communities has or may have, either legal or equitable, known or unknown, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in this lawsuit as of the Effective Date. Enforcement of this Consent Decree is Communities' exclusive remedy for any violation of its terms. During the term of this Consent

KAMPMEIER & KNUTSEN PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

Decree, Communities will not knowingly help other entities bring CWA citizen lawsuits, including sixty-day notice letters, against Husky for violations of Husky's Permit at the Facility.

10.    **Retention of Jurisdiction and Dispute Resolution.** This Court retains jurisdiction over this matter to oversee and ensure compliance with this Consent Decree. While this Consent Decree remains in force, the Parties may reopen this case without filing fee to apply to the Court for any further order or relief that may be necessary to enforce compliance with this Consent Decree or to resolve any dispute regarding this Consent Decree. Before seeking relief from the Court under this Paragraph, the Parties must first seek to resolve the dispute themselves, as follows: 1) the Party identifying or wishing to raise an issue or dispute must provide the other Party a written notice, pursuant to the notice provisions in Paragraph 11 of this Consent Decree, detailing the nature of the issue or dispute; and 2) within thirty (30) days of receipt of such notice, the Parties shall meet and confer regarding the issue or dispute. If the Parties do not resolve the dispute at that meeting or within thirty (30) days of the written notice, whichever comes first, either Party may file a motion with this Court to resolve the dispute or seek any other available relief. In any action to enforce this Consent Decree, the Court shall apply the same standard applied by courts in awarding fees and costs under section 505(d) of the CWA, 33 U.S.C. § 1365(d).

11.    **Notice.** All notices and other communications regarding this Consent Decree shall be in writing and made by sending an e-mail to the following addresses, or to such other addresses as the Parties may designate by written notice:

//

//

KAMPMEIER & KNUTSEN PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

<u>For Plaintiff Communities for a Healthy Bay</u>:

Melissa Malott, Executive Director
Communities for a Healthy Bay
mmalott@healthybay.org

**With a copy to:**

Emma Bruden
Kampmeier & Knutsen, PLLC
emma@kampmeierknutsen.com

<u>For Defendant Husky Terminal and Stevedoring, LLC</u>:

Dustin Stoker, President
Husky Terminal and Stevedoring, LLC
Dustin.Stoker@huskyterminal.net

**With a copy to:**
Veronica Keithley
Stoel Rives LLP
veronica.keithley@stoel.com

12.    **Voidability.** If for any reason the Court enters this Consent Decree as an Order of the Court with any different stipulations, terms, or conditions than the Consent Decree as proposed by the Parties, this Consent Decree and the settlement embodied herein shall be voidable at the sole discretion of either Party. If voided, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

13.    **Force Majeure.** A force majeure event is any event outside the reasonable control of Husky that prevents or causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence. By way of example and not limitation, force majeure events include:

i. Acts of God, war, insurrection, or civil disturbance;

ii. Earthquakes, landslides, fire, floods;

iii. Actions or inactions of third parties over which Husky has no or limited control;

KAMPMEIER & KNUTSEN PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

iv. Unusually adverse weather conditions;

v. Restraint by court order or order of public authority;

vi. Strikes;

vii. Any permit or other approval sought by Husky from a government authority to implement any of the actions required by this Consent Decree where such approval is not granted or is delayed and where Husky has timely and in good faith sought the permit or approval;

viii. Litigation, arbitration, or mediation that causes delay;

ix. Epidemics and pandemics; and

x. Supply chain issues and delays.

If Husky becomes aware of a force majeure event that causes or threatens to cause a delay in performance or prevention of performance of a task required by this Consent Decree, Husky shall notify Communities as soon as reasonably possible but, in any case, no later than fifteen (15) days after Husky becomes aware of the force majeure event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

A.    **Delay in Performance**. Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree, provided that Husky timely notifies Communities of the event, the steps that Husky will take to perform the task, the projected time that will be needed to complete the task, and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

B.    **Prevention of Performance**. Prevention of performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms

CONSENT DECREE - 12
Case No. 3:24-cv-05662-BHS

KAMPMEIER & KNUTSEN PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

of this Consent Decree, provided that: (1) Husky timely notifies Communities of the event; (2) within fifteen (15) days of Husky notifying Communities of the event, the Parties meet and confer to negotiate in good faith action(s) for Husky to implement that substitute for the task prevented by the force majeure event ("Parties' Conferral"); (3) within fifteen (15) days of the Parties' Conferral, the Parties file a motion with the Court to modify this Consent Decree, pursuant to Paragraph 15, to memorialize the action(s) identified during the Parties' Conferral; and (4) the Court enters the modification of this Consent Decree. Neither Communities nor Husky shall unreasonably withhold agreement to a modification of this Consent Decree under this Subparagraph 13.B.

14. **Entirety of Agreement.** This Consent Decree constitutes the entire agreement between the Parties. There are no other or further agreements, written or verbal.

15. **Modifications.** This Consent Decree may only be modified upon a writing signed by representatives for each Party and approved by the Court.

16. **Terms Severable.** If, after entry of this Consent Decree, any term, covenant, or condition of this Consent Decree is subsequently held to be invalid or unenforceable in any respect, such invalidity or unenforceability shall not affect any other provision included in this Consent Decree. This Consent Decree shall be construed as if such invalid or unenforceable provision had never been contained in this Consent Decree.

IT IS SO ORDERED.

DATED this 10th day of January, 2025.

HONORABLE BENJAMIN H. SETTLE
UNITED STATES DISTRICT JUDGE

CONSENT DECREE - 13
Case No. 3:24-cv-05662-BHS

1    Presented By:

2    KAMPMEIER & KNUTSEN, PLLC

3    By: s/ Emma A. O. Bruden
4    Emma A. O. Bruden, WSBA # 56280
     Kampmeier & Knutsen, PLLC
5    1300 S.E. Stark Street, Suite 202
     Portland, Oregon 97214
6    Telephone: (503) 719-5641
7    Email: emma@kampmeierknutsen.com

8    *Attorneys for Plaintiff Communities for a Healthy Bay*

9    STOEL RIVES LLP

10   By: s/ Veronica M. Keithley
11   Veronica M. Keithley, WSBA # 52784
     Stoel Rives LLP
12   600 University Street, Suite 3600
     Seattle, WA 98101
13   Telephone: (206) 386-7583
     veronica.keithley@stoel.com
14
15   *Attorneys for Defendant Husky Terminal and Stevedoring, LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED]** CONSENT DECREE - 14
Case No. 3:24-cv-05662-BHS

KAMPMEIER & KNUTSEN PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
(503) 719-5641

Exhibit 1



**LEGEND**

- STORM DRAIN
- STORM DRAIN (OFF SITE)
- GALVANIZED FENCE
- DRAINAGE BASIN (PORT)
- SWPPP BOUNDARY
- STATIONARY SPILL KIT
- CATCH BASIN
- STORM DRAIN MANHOLE
- OIL/WATER SEPARATOR
- STORM FILTER STRUCTURE
- OUTFALL
- WATERFRONT PERIMETER PER PARAGRAPH 6.G.
- PORTION OF BASIN 3 TREATED WITH MODULAR WETLAND
- PORTION OF BASIN 4 TREATED WITH MODULAR WETLAND

APPROXIMATE SCALE IN FEET
0    350    525

Kennedy Jenks

HUSKY TERMINAL & STEVEDORING LLC
TACOMA, WA

**FIGURE 2: SITE PLAN**

2396006*00
AUGUST 2023

NOTES:

1. STORM DRAINAGE BASINS AND STORMWATER CONVEYANCE IS BASED ON PORT OF TACOMA GIS. THIS MAP MAY BE INCOMPLETE OR INCORRECT, PROVIDED FOR CONCEPTUAL PURPOSES. NOT FIELD VERIFIED, NOT FOR CONSTRUCTION.
2. VARIOUS PORT OF TACOMA (PORT) CONSTRUCTION ACTIVITIES ARE TAKING PLACE ACROSS THE SITE AND ARE ANTICIPATED TO CONTINUE THROUGH THE REMAINDER OF THE 2020 – 2024 PERMIT CYCLE.
3. MOBILE FUELING TRUCKS CONTAIN SPILL KITS. AN ON-SITE SPILL RESPONSE TRUCK CONTAINS A SPILL KIT.
4. TREATMENT MEDIA IS INSTALLED IN REMOVAL BAGS IN CATCH BASINS IN DRAINAGE BASINS 7 THROUGH 10 TRIBUTARY TO THE SITCUM WATERWAY. LOCATIONS OF MEDIA WILL BE MODIFIED AS NEEDED.

# Exhibit 2



Law Office
# PUYALLUP TRIBE OF INDIANS



November 21, 2024

Citizen Suit Coordinator
United State Department of Justice
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Washington, D.C. 20044-7415

**Re:    Communities for a Healthy Bay v. Husky Terminal and Stevedoring, LLC,
(W.D. Wash. Case No. 3:24-cv-05662-BHS)**

Dear Citizen Suit Coordinator,

This letter is intended to provide assurance that we have received the final or near-final version of the proposed Consent Decree between Communities for a Healthy Bay (CHB) and Husky Terminal and Stevedoring (Husky) and that Puyallup Tribe of Indians Tribal Council makes the following binding commitments on behalf of the Puyallup Tribe of Indians.

1. I understand that the Puyallup Tribe of Indians will receive funds from Husky as specified in the final Consent Decree which the Tribe has reviewed.
2. The Puyallup Tribe will not use any of the funds received under the proposed consent decree for political lobbying activities.
3. The Puyallup Tribe of Indians shall only use the funds received under the proposed consent decree for one or more projects benefitting water quality and/or aquatic habitat in the Puget Sound.
4. After funds are disbursed and utilized, the Puyallup Tribe of Indians shall send a report to the Justice Department, the Court, and the Parties setting forth the how the funds were used and demonstrating conformance with the nexus of the Consent Decree.

The Puyallup Tribe is a federally recognized tribe who has lived in Puget Sound since time immemorial. We are dependent upon fish and shellfish resource from area waters for our cultural, spiritual, subsistence, and economic well-being. Because our health, survival and very existence are linked to the right to safely harvest and consume fish and shellfish resources from this area we have dedicated millions of dollars annually to protect and enhance these resources. The tribe actively manages, participates in and develops restoration and recovery actions of fish and shellfish stocks within our Usual

Citizen Suit Coordinator, United States Department of Justice
November 20, 2024
Page 2

and Accustomed Area.   Details of these activities can be found in our annual reports available at https://www.puyalluptribe-nsn.gov/wp-content/uploads/2022-2023-Annual-Fisheries-Report_Final.pdf.

Please do not hesitate to contact my staff at Fisheries or Shellfish with any questions pertaining to restoration and enhancement of aquatic resources anywhere in the Puyallup River watershed or within surrounding marine areas.


Sincerely,


Bill Sterud, Chairman
Puyallup Tribe of Indians

# Exhibit 3



**201 4TH STREET, SUITE 102
OAKLAND, CALIFORNIA 94607
TELEPHONE 510.658.0702**

November 22, 2024

Joseph Manning
United States Department of Justice
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

_Re: Communities for a Healthy Bay v. Husky Terminal and Stevedoring, LLC, Case No. 3:24-cv-05662-BHS_

Dear Mr. Manning,

This letter is intended to provide assurance that I have received and read the final or near-final version of the proposed Consent Decree between the above parties, and that I am authorized by my Executive Director and Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation should receive funds from Defendant as specified in the Consent Decree.
2) The Rose Foundation shall only use these funds to support project(s) benefitting water quality and/or aquatic habitat in Puget Sound and not for any direct political lobbying activities as defined by the IRS.
3) After funds are dispersed, the Rose Foundation shall send a report to the Justice Department and the Settling Parties setting forth the recipient and purpose of the funds and demonstrating conformance with the nexus of the Consent Decree.
4) Due to the disproportionate impact of pollution from facilities to low-income neighborhoods and communities of color, the Rose Foundation's policy is to prioritize projects from these neighborhoods in selecting grantees.

**Rose Foundation for Communities and the Environment**

The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772). Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health. To fulfill this mission, the Rose Foundation conducts the following activities:

- Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Foundation does not support political lobbying activities prohibited by Section 501(c)(3) of the IRS Code.

- Work directly in schools and in the community to encourage environmental stewardship and civic participation.



- Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

Within this broad range of activities, all the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.

- Protect the natural environment, public health, and consumer rights.

- Promote collaboration between labor, environmental, business, consumer and social interests.

- Cultivate a new generation of environmental stewards and social policy leaders.

- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors.  Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request. The Foundation may require additional information in order to fully evaluate the application. Applications are first screened by Foundation staff. Staff then make recommendations to the Foundation Board for action. The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded. Annual audits by the certified public accounting firm Maze and Associates are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require.  Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or jisaacs@rosefdn.org.

Sincerely,

Jodene Isaacs
Director of Grantmaking